UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail: Lauren.Bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 17-22853 (KCF) |
| | Chapter 11 |
| Pantaleo and Maria LaForgia, | |
| | The Honorable Kathryn C. Ferguson |
| Debtors. | |
| | Hearing Date: March 1, 2018 |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO THE ADEQUACY OF THE DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING CHAPTER 11 PLAN PROPOSED BY PANTALEO AND MARIA LAFORGIA**

The Acting United States Trustee (the "U.S. Trustee"), by and through his counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), hereby asserts this objection ("Objection") to the adequacy of the Debtor's *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing Reorganizing Chapter 11 Plan Proposed Pantaleo and Maria LaForgia* ("Disclosure Statement") (Docket No. 49), and in support of the Objection, respectfully represents as follows:

**BACKGROUND**

1. On June 23, 2017 ("Petition Date"), Pantaleo and Maria LaForgia ("Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. *See* Docket No. 1.

2. The Debtors continue to manage their affairs and manage their property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtors own four pieces of real property: (i) their residence, 342 Aldo Dr., Toms River, NJ; (ii) 380 Aldo Dr., Toms River, NJ; (iii) 344 Aldo Dr., Toms River, NJ; and (iv) 287 Aldo Dr., Toms River, NJ.  *See* Docket No. 1, Schedule A/B.

4. On January 8, 2018, the Debtors filed a *Plan of Reorganization of Pantaleo and Maria LaForgia* ("Plan") and the Disclosure Statement, which is the subject of this Objection.  *See* Docket Nos. 48 and 49.

5. On January 10, 2018, the Court entered an *Order and Notice on Disclosure Statement*, scheduling an adequacy hearing for February 8, 2018, which was subsequently adjourned to March 1, 2018.  *See* Docket Nos. 54 and 59.

6. The Disclosure Statement provides, in relevant part that: (A) the Plan will be funded by business income from the Debtors' employment and rents paid by the tenants of the Debtors' real properties; (B) all administrative claims will be paid in full on the Effective Date; (C) the secured claim on the Debtors' residence, 342 Aldo Drive, in the amount of $672,207.10 is unimpaired and the Debtor "will make monthly payments of $3,580 in order to cure the arrearage of approximately $20,000"; (D) the secured claim on 344 Aldo Drive, in the amount of $955,964.42 will be "reduced" to $325,000, and the Debtor will make "monthly payments of $1,551.60 to be applied first to interest at the annual rate of 4% and the remainder to principal"; (E) the secured claim on 380 Aldo Drive, in the amount of $1,176,673.76 will be "reduced" to $300,000, and the Debtor will make "monthly payments of $1,432.25 to be applied first to interest at the rate of 4% per year and the remainder to principal"; (F) the secured claim on 287 Aldo Drive, in the amount of $359,939.95 will be "reduced" to $250,000, and the Debtor will make "monthly

payments of $1,193.54 to be applied first to interest at the annual rate of 4% and the remainder to principal"; (G) the secured claim of the IRS in the amount of $225,884.28 will be "reduced" to $76,905, the balance reclassified as a general unsecured claim, and the Debtor will make monthly payments of $1,416.32, with interest, starting on the Effective Date until the first day of the month that is the sixty month from the Petition Date; (H) the secured claim of the New Jersey Division of Tax in the amount of $48,860.76 will be "reduced" to $0 and reclassified as a general unsecured claim; (I) general unsecured claims (impaired) will be paid $630 per month over five years, distributed pro rata resulting in approximately 2% distribution with payments "commencing on the Effective Date and continuing every year thereafter until paid in full"; and (J) the Effective Date is thirty days after the entry of the confirmation order. *See* Docket No. 49.

7.In support of feasibility, the Debtors attach a "spread sheet" of monthly income and expenses. *See id*., Exhibit B, Cash Flow Projections.

8.Pursuant to 11 U.S.C. § 586, the U.S. Trustee is obligated to oversee the administration of Chapter 11 cases. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding under the Bankruptcy Code. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc.* (*In re Columbia Gas Systems, Inc.*), 33 F.2d 294, 295-96 (3d Cir. 1994) (nothing that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

**LEGAL ANALYSIS**

9.     Pursuant to Section 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate information" to allow parties to make an informed judgment about a plan of reorganization or liquidation. Section 1125(a)(1) defines "adequate information" as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

*See* 11 U.S.C. § 1125.

10.     Full disclosure is a fundamental policy in the reorganization process. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1980), *cert. denied*, 109 S. Ct. 495 (1988) ("[W]e cannot overemphasize the Debtor's obligation to provide sufficient data to satisfy the code standard of 'adequate information.'"); s*ee also In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) ("Given the necessity for adequate information in the Disclosure Statement and the paramount position Section 1125 occupies in the Chapter 11 process, there is little, if any, room for harmless error.").

11.     In addition, courts have held that were a proposed plan is not confirmable on its face, it will not approve a disclosure statement with respect to that plan because to do so would be an exercise in futility. *See In re Market Square Inn, Inc.*, 163 B.R. 64, 68 (Bankr. W.D. Pa. 1994); *In re Washington Associates*, 141 B.R. 275 (Bankr. S.D.N.Y. 1992); *In re Eastern Marine Electric*

*Co-op, Inc.*, 125 B.R. 392 (Bankr. D. Me. 1991); and *In re McCall*, 44 B.R. 242, 243 (Bankr. E.D. Pa. 1984).

12. The information in the Disclosure Statement is incomplete and at times confusing and contradictory.

13. The Debtors propose significant cramdowns of the secured claims on their real property. In particular, on 344 Aldo Drive, the Debtors propose to cramdown the secured claim of Ocwen from $955,964.42 to $325,000, and on 380 Aldo Drive, a cramdown of the secured claim of Bank of New York Mellon from $1,176,673.76, to $300,000. The Debtors do not provide any information to support the value of the real property.

14. The information in the Disclosure Statement concerning payment to unsecured creditors is contradictory. Under Section III.C.3, unsecured creditors are listed as "impaired." The proposed treatment states claims in this class will be paid $630 per month for an approximate distribution of "2%" but ends the same sentence by saying claims will be paid every year "until paid in full." Further, under the feasibility analysis in Section IV.C., the Debtors state the first distribution to unsecured creditors will be $693.33.

15. Perhaps most confusing is the "spread sheet" attached as Exhibit B showing projected income and expenses. The Debtors show projected monthly income of $19,800 and projected monthly expenses of $12,502.39, resulting in net income of $7,297.61.

16. It is unclear how the Debtors calculated the proposed monthly mortgage payments for all of the properties. For instance, on their residence, 342 Aldo Drive, the Debtors state they will pay "$3,580 in order to cure the arrearage of approximately $20,000.00." On Exhibit B, the Debtors show the total payment on account of 342 Aldo Drive is $3,580. Is this just the cure payment? It does not appear to represent principal, interest, taxes and cure because the Debtors'

5

Schedule J shows that the principal and interest payment along with real estate taxes is $4,283.41/month. The proof of claim related to this property, Claim No. 10, calculates the principal and interest payment along with real estate taxes at $4,167.31/month. Accordingly, the amount the Debtors budget for 342 Aldo Drive is insufficient to pay the normal monthly payments, let alone inclusion of the past due amounts.

17. Further, the other monthly expenses listed the by Debtors is not at all in line with the monthly expenses shown on their MORs. The following chart compares Exhibit B to the most recently filed MOR, December 2017 (Docket No. 58), as well as the 6 month average taken from the "Cumulative" column on the December 2017 MOR:

| Expense Type | Ex. B. | December MOR | 6 Month Average[1] |
|---|---|---|---|
| Water Utilities | $50 | | |
| Utilities | $270 | $633.66 | $734.65 |
| Insurance | $850 | $1,772.07 | $924.38 |
| Auto | $620 | $756.50 | $1,310.31 |
| Medical Expense | $350 | $540.47 | $831.18 |
| Household | $750 | $2,133.04 | $2,220.28 |
| Timeshare Mortgage[2] | $600 | | |
| Repairs & Maintenance | | $840 | $1,276.74 |
| Travel & Entertainment | | $863.90 | $1,110.44 |
| Shipping/Investments[3] | | $3,567.40 | $1,368.33 |
| Bankcards[4] | | | $1,082.33 |
| TOTALS | $3,490 | $11,107.04 | $10,858.64 |

In each and every category, the monthly expense on Exhibit B, reflecting the Debtors' estimated monthly expenses going forward, is significantly less than that shown on the most recently filed MOR and the 6 month average calculations.

---

[1] These figures are based on the Cumulative column on the December MOR.
[2] It is entirely unclear what expense this relates to as the Debtors did not disclose an interest in a timeshare on their Schedules.
[3] It is unclear what this expense refers to.
[4] It is unclear what this expense refers to.

6

18. The information provide is confusing, inaccurate, contradictory and, ultimately, inadequate.

## **CONCLUSION**

WHEREFORE, it is respectfully submitted that the Court not approve the Disclosure Statement, and grant such other relief as the Court deems just and proper.

                Respectfully submitted,

                ANDREW R. VARA
                ACTING UNITED STATES TRUSTEE
                REGION 3

        By:    */s/ Lauren Bielskie*
                Lauren Bielskie
                Trial Attorney

Dated: February 15, 2018